Argued 30 October; decided 18 November, 1901.

## HERREN'S ESTATE.

### GATCH *v.* SIMPSON.

[66 Pac. 688.]

RIGHT OF ADMINISTRATOR DE BONIS NON TO SUE.

1. Under Hill's Ann. Laws, §§ 1098, 1099, providing that on the death or removal of an administrator a new one shall be appointed, who shall be entitled to the exclusive administration of the estate, and to maintain any necessary action against the administrator ceasing to act, or against his sureties or representatives, an administrator *de. bonis non* may recover from the representative of the former administrator or his sureties assets converted by the first administrator.

POWER TO COMPEL ACCOUNTING BETWEEN ADMINISTRATORS.

2. Under Hill's Ann. Laws, § 985, giving the county court exclusive jurisdiction over the accounts of administrators, etc., and section 1078, providing that the mode of proceeding in the county court is in the nature of a suit in equity, and its jurisdiction of the parties is obtained by citation, the county court has jurisdiction of a suit by an administrator *de bonis non* to compel the representative and sureties of the first administrator, who had died, to settle the accounts of their principal.

ACCOUNTING BY ADMINISTRATOR—BURDEN OF PROOF.

3. Where, in a suit by an administrator *de bonis non* against the representative and sureties of the deceased administrator, it is shown that a certain sum was in such administrator's hands when his last report was made, the burden of proof is on the representative and sureties to show the proper administration of such fund.

From Marion: REUBEN P. BOISE, Judge.

This proceeding was instituted in the county court by Claud Gatch, administrator *de bonis non* of the estate of W. J. Herren, deceased, against M. W. Hunt, administrator of the estate of J. J. Shaw, deceased, the former administrator of the Herren estate, and against the sureties on Shaw's bond, to require the former to file the papers and vouchers in his possession showing the disbursements made by his intestate, and the latter to make final settlement of their principal's accounts. The petition alleges, in substance, that on the twenty-ninth of April, 1891, Shaw was appointed administrator of the Herren estate by the county court of Marion County; that he qualified by giving a bond as required by law, with the defendants Hubbard, Simpson, and Albert as sureties; that thereafter he disposed of all the property of the estate, except four lots in Astoria, appraised at $4,000, and received therefor $11,462.64; that prior to the twenty-sixth of April, 1894, he disbursed as such administrator the sum of $8,981.15, and on that day filed his semiannual account, which was approved by the county court, showing a balance on hand of $2,481.49, applicable to the payment of claims and expenses; that the court ordered and directed him to pay a dividend of ten per cent. on the approved claims; that the petitioner is advised and believes that such dividend was paid to some of the claimants, but he has no knowledge as to the number thereof; that, after the filing of his semiannual account on April 26, 1894, Shaw made no further report to the court showing the condition of the estate; that he died on June 24, 1898, without having fully administered the same; that the only property belonging to the Herren estate is that at Astoria and the balance due from Shaw; that since his appointment the petitioner has demanded of Hunt, the administrator of the Shaw estate, that he make and file a statement showing the amount of money paid by his intestate under the order of April 26, 1894, so far as he can from the records and vouchers in his possession, and of Simpson, Albert, and Hubbard that they make and file a state-

ment of Shaw's administration of the Herren estate, but they have failed and refused to comply with such demand. A demurrer to this petition on the grounds that the court was without jurisdiction and that the petition did not state facts sufficient to constitute any cause of suit or proceeding being overruled, Hubbard, Simpson, and Albert filed a joint answer denying the allegations of the petition, and Hunt filed a statement of the receipts or vouchers, which, upon their face, purported to be payments, made by Shaw in the administration of the Herren estate, amounting in the aggregate to $923.09. Upon the trial the county court found from the records and papers of the estate and from the evidence offered at the hearing that Shaw had in his possession, after allowing credit for all payments made to creditors, commissions, and attorney fees, the sum of $1.136.46, the property of the estate, for which he should be charged, with interest at the rate of eight per cent. per annum, less credit for taxes paid to be deducted from the interest, leaving the sum of $1,280.72 due on the fourth of June, 1899, and entered an order settling and allowing his final account on that basis. An appeal was taken to the circuit court, where the decree of the county court was affirmed, and Hubbard, Simpson, and Albert, Shaw's sureties, appeal to this court.                                                    AFFIRMED.

For appellants there was a brief over the names of *John A. Carson, W. T. Slater,* and *Wm. M. Kaiser,* with an oral argument by *Messrs. Carson* and *Kaiser.*

For respondent there was a brief over the names of *Ramsey & Bingham,* and *Bonham & Martin,* with an oral argument by *Messrs. Geo. G. Bingham* and *Benj. F. Bonham.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. It is first contended that the petitioner had no authority to institute this proceeding. At common law the authority of an administrator *de bonis non* extended to only such of the

estate of the deceased as remained unadministered or unconverted by his predecessor. He could not maintain an action to recover converted assets, but that right belonged to the heirs, legatees, creditors, or others interested in the estate: 2 Woerner, Administration (2 ed.), § 536; *Bradshaw* v. *Commonwealth*, 3 J. J. Marsh, 632. But, as Mr. Woerner points out, the historical justification of this rule, however valid in England, does not exist in this country, and therefore many of the states have discarded the rule itself, either by judicial authority or by statutory enactments. And this is true in this state. The statute provides that whenever all the executors or administrators die, resign, or are removed, administration of the estate remaining unadministered shall be granted to those next entitled, if they be competent and qualified; and that the new administrator "is entitled to the exclusive administration of the estate, and for that purpose may maintain any necessary and proper action, suit, or proceeding on account thereof, against the executor or administrator ceasing to act, or against his sureties or representatives": Hill's Ann. Laws, §§ 1098, 1099. The plain purpose of these provisions is that the assets of an estate shall always be in the hands and under the control of an acting executor or administrator, and subject, in the manner designated by law, to the jurisdiction and supervision of the county court. To this end it contemplates that when an executor or administrator dies, or is removed, all the property in his hands belonging to the estate shall pass to his successor, and such successor is given power and authority to maintain all proper actions, suits, or proceedings to secure the possession thereof. Assets which have been converted into money are none the less still unadministered within the meaning of the law, and an administrator *de bonis non* may under the statute proceed against the former administrator or his sureties to recover the amount thereof. This seems to be the general trend of the authorities in this country, independently of statute. See 2 Woerner, Administration (2 ed.), § 352. But we are not without direct judicial authority on the question in hand. The statute of Kansas (Gen. St. 1889,

§ 2810) is substantially the same as ours, and the supreme court of that state held that it gives a substituted administrator the right to maintain an action against his predecessor as well as against the sureties upon his bond, to recover the converted assets: *Davis* v. *Clark,* 58 Kan. 454 (49 Pac. 665). In Iowa the statute is not nearly so explicit as ours, but simply provides that in case of a vacancy in the administration letters may be granted to some person, and that such substitution shall cause no delay in the administration of the estate (McClain's Ann. St. §§ 2348, 2349), and it was held that these provisions so changed and modified the common-law rule that an administrator *de bonis non* could sue on the bond of a former administrator to recover the proceeds of property belonging to the estate and converted by him: *Stewart* v. *Phenice,* 65 Iowa, 475 (22 N. W. 636). The objection that the petitioner has no authority to institute this proceeding is therefore, in our opinion, without merit.

It is next urged that the court was without jurisdiction, because the petition does not allege that Shaw's administrator had in his possession any property belonging to the Herren estate; but no relief is asked against him, except that he file in the county court such vouchers and papers belonging to the Herren estate as may be in his possession, and, besides, it is not clear upon what ground the sureties on Shaw's bond, who alone appeal, can urge this question.

2.   Again, it is contended that the county court is without jurisdiction to compel the sureties of a deceased administrator to make final settlement of the accounts of their principal. It has been held by this court in *Adams* v. *Petrain,* 11 Or. 304 (3 Pac. 163), that no action or proceeding can be maintained upon the bond of an administrator or executor until final settlement of his accounts. Such settlement, therefore, is a prerequisite to an action by the petitioner to recover from the sureties the fund in Shaw's hands at the time of his death belonging to the Herren estate. Now, a settlement by the administrator *de bonis non* would manifestly not be binding on the sureties. As to them it would be *res inter alios acta.* Nor

can Shaw's administrator be compelled to make the final settlement: *Cross* v. *Baskett,* 17 Or. 84 (21 Pac. 47). The sureties of an executor or administrator, in the absence of fraud or collusion, are bound by the judgments or decrees against their principal in the course of administration (*Bellinger* v. *Thompson,* 26 Or. 320 (37 Pac. 714, 40 Pac. 229); but they are not bound by acts done by the personal representatives or successors of their principal, for whose fidelity they have not promised to answer. No judicial ascertainment of the liability of an administrator after his death can be binding upon his sureties unless they are parties to the proceeding. In some jurisdictions it is held that the remedy in such cases is by a bill in equity against the sureties for an accounting: *Bush* v. *Lindsey,* 44 Cal. 121; *Chaquette* v. *Ortet,* 60 Cal. 594; *Curtiss* v. *Curtiss,* 65 Cal. 572 (4 Pac. 578); *Martin* v. *Ellerbe's Administrator,* 70 Ala. 326. These cases, however, are put upon the ground that the statutes did not confer authority upon the probate court to take and settle the accounts, and therefore relief must be had in a court possessing general equity powers. The constitution of this state provides that "the county court shall have the jurisdiction pertaining to probate courts": Const. Or. Art. VII, § 12. And the statute defining its jurisdiction declares: "The county court has the exclusive jurisdiction, in the first instance, pertaining to a court of probate; that is,— (1) To take proof of wills; (2) to grant and revoke letters testamentary of administration and of guardianship; (3) to direct and control the conduct and settle the accounts of executors, administrators, and guardians," etc.: Hill's Ann. Laws, § 895. The mode of proceeding in the county court, when sitting for the transaction of probate business, is in the nature of a suit in equity, and its jurisdiction of the parties is obtained by a citation (Hill's Ann. Laws, § 1078); and its orders or decrees for the payment of money may be enforced by execution in the same manner as similar orders or decrees in the circuit court (Hill's Ann. Laws, § 1082). These several statutory provisions not only confer upon the county court ample power and authority to settle and adjust the ac-

counts of a deceased administrator, but manifestly require that proceedings for that purpose shall be instituted in that court: *Davis* v. *Eastman*, 66 Vt. 651 (30 Atl. 1).

This is, in effect, the construction given to the statute in *Clark's Heirs* v. *Ellis*, 9 Or. 128, where it is held that a proceeding to contest the validity of a will and to revoke letters testamentary was properly commenced in the county court, and in *Adams* v. *Petrain*, 11 Or. 304 (3 Pac. 163), holding that no action can be maintained on an administrator's bond until after a final settlement of his accounts in the county court. In the latter case it is said: "In the case before us the account of the administrator was not settled in the county court. The circuit court undertook to discharge that duty, and the judgment which the respondent obtained in the action is based upon the settlement of accounts had in the circuit court. Was the settlement of this account a matter pertaining to the jurisdiction of a court of probate? It cannot be denied, and, besides, the statute quoted from expressly enumerates such settlements as within the jurisdiction belonging to a court of probate; and, if it is a subject of probate jurisdiction, which is undeniable, then it is within the exclusive jurisdiction of the county court, and the action of the circuit court was unwarranted." An adjudication against the administrator upon a citation to him will be binding upon his sureties, without notice to them. But if he die, leaving the estate unsettled, his sureties must be made parties to the proceeding, and citation issue to them, or the decree will not be binding upon them, or even evidence against them. We are agreed, therefore, that the demurrer to the petition was properly overruled. .

3. The remaining question is as to the amount which should be charged against Shaw on final settlement, and in that regard the findings of the court below must be affirmed. Shaw's semiannual account of April 26, 1894, which was approved by the county court, showed a balance in his handh at that time of $2,481.49, and this account and the findings of the court furnish at least *prima facie* evidence against the sureties: *Bellinger* v. *Thompson*, 26 Or. 320 (21 Pac. 47); *Wilson* v.

*Hinton,* 63 Ark. 145 (38 S. W. 338); *Irwin* v. *Backus,* 25 Cal. 214 (85 Am. Dec. 125); *Pundmann* v. *Schoenich,* 144 Mo. 149 (45 S. W. 1112); *School Dist.* v. *Hubbard,* 110 Iowa, 58 (81 N. W. 241, 80 Am. St. Rep. 271). The burden of proof was therefore upon them to show that this fund has been properly administered. Upon the final settlement the court allowed for all disbursements shown by the testimony.

The decree of the court below is therefore affirmed.

AFFIRMED.