Argued October 3, modified December 18, 1928, rehearing denied February 13, 1929.

# MARGARET FITCHARD v. THE ESTATE OF H. H. HIRSCHBERG, Deceased, et al.

(272 Pac. 906; 274 Pac. 505.)

For appellants there was a brief over the names of *Messrs. Dey, Hampson & Nelson,* with an oral argument by *Mr. George L. Buland.*

For respondents there was a brief over the name 'of *Mr. James L. Conley,* with an oral argument by *Mr. I. N. Smith.*

BEAN, J.—Mr. Oscar Hayter, an attorney of Dallas, in that county, had been the attorney for Harold L. Fitchard in his lifetime and also for Mr. Hirschberg, and the First National Bank of Independence. Soon after Mr. Fitchard's death Mrs. Fitchard consulted Mr. Hayter, who at her request came to her house on account of her illness. She was advised as to the general situation in respect to the property of the estate and the necessity of probate proceedings and guardianship relating to the care of her minor son's share of the estate. Mrs. Fitchard first petitioned for the appointment of herself as administratrix of the estate and afterward withdrew her petition and requested the appointment of Mr. Hirsch-

berg as administrator. This was apparently because of the intricacies of the estate and her inexperience in business.

After his appointment the administrator promptly published notice to creditors. On August 14, 1919, a report was filed setting forth the claims which had been allowed and requested payment of the same, and an order was then entered for such payment. On April 24, 1919, the administrator collected $10,000 of insurance money. This with the other receipts brought the estate funds on hand to over $16,000. By September the payment of the allowed claims was practically completed. The C. L. Fitchard disputed claim of $5,642, was presented on July 18, 1919, and the other claim of about $153 of Fitchard & Wolfe was presented at the same time.

Mr. Hayter, a trustworthy and experienced attorney, as a witness for the defendants, testified that investigation of these claims and the fact that they were pending undetermined, delayed the filing of the final account. Negotiations for settlement were going on and largely on account of these claims final account was not filed until September 22, 1920. In November, 1920, C. L. Fitchard and Fitchard & Wolfe, filed an objection to the final account, for the reason of the disallowance of their claims.

The trial involving these objections was commenced on December 16, 1920. On January 19, 1921, the County Court made findings of fact disallowing the objections and rendered a decree accordingly. The time for appeal from this decree expired on February 19, 1921. In March, 1921, a supplemental final account was filed and on April 7, 1921, a decree approving the final account and supplemental account, and discharging the administrator, was entered by the

County Court. It is not shown that there was any unnecessary delay in the administration of the estate.

The first cause of suit consists of the plaintiff's claim that the defendants should be charged with interest upon the funds of the estate amounting to between nine and ten thousand dollars, which were held on deposit by the administrator in a checking account in the First National Bank of Independence for a period of a year and ten months, during the close of the administration, and that a money decree should be awarded therefor.

The defendants pleaded, in effect, that this matter was settled and adjudicated by the decree of the Probate Court approving the administrator's final account, which disclosed all of the facts and included no charge for interest.

In plaintiff's complaint it was alleged that neither the bank nor Hirschberg disclosed to plaintiff the facts in relation to the matter of interest or the plaintiff's rights thereunder, and that the plaintiff did not discover her rights until a month before institution of this suit. The answer of defendants first alleges facts tending to show that Hirschberg was not negligent in not closing the estate sooner and in not seeking an investment for the funds on hand, in that there were large claims which had to be determined or settled, and the determination of which dragged along without fault on Hirschberg's part, and beyond the time reasonably anticipated by him.

It was also pleaded in the answer that Margaret Fitchard in her personal and also in her guardianship capacity, was barred by laches from the prosecution of this suit, having been in possession of all of the facts long prior to two years before the commencement of this suit. Plaintiff's reply put in issue the

allegations of the affirmative answer, except as alleged in the complaint.

It is shown by the record that the account of H. Hirschberg, as administrator in the First National Bank of Independence, on the last of April, 1919, disclosed that there was over $16,000 on hand. This amount was reduced by the payment of claims, so that in September, 1919, there was slightly over $10,-000 on hand. From October 7, 1919, until after the first of March, 1921, there was a balance of some over $9,000. These balances were kept by the administrator in a checking account, upon which no interest was paid by the bank. The bank did not have a savings department during that time. It paid no interest on any checking account, except in case of the deposits of public moneys on which 2 per cent was paid; that certificates of deposit were issued upon which interest of from 3 to 4 per cent per annum was paid, depending upon the length of time of the deposit.

The final account filed by the administrator on September 22, 1920, is contained in the record and sets forth the procedure in the matter of the estate with clarity and fullness, and indicates the moneys received and dates thereof and the disbursements made.

Notice of filing of the final account was regularly given as provided by law. The check which Mrs. Fitchard received for her individual share of the estate for $3,838.60, had thereon a notation, ''my share of estate as divided by court.'' The check which she received on March 12, 1921, as guardian for her minor son, for his share of the estate, in the amount of $4,453.67, had written upon it, ''in full to date.'' She was appointed guardian of her son March 3d, 1921, upon her petition of that date. A complaint in

this cause was filed by Margaret Fitchard in her individual capacity alone on October 18, 1924.

It is first contended by defendants that the order of the County Court of Polk County, in the matter of the estate of Harold Fitchard, made upon due notice, approving the final account of Hirschberg, as administrator and discharging him from his trust, is conclusive upon all adult heirs and parties in interest, in the absence of fraud, mistake or duress. They cite the case of *State* v. *O'Day*, 41 Or. 495 (69 Pac. 542). Let us take as a key to the situation the language of former Justice BEAN, in that case, found on page 502 of the report (69 Pac. 545) as follows:

"The notice published in obedience to the orders of the county court upon the filing of Cooper's final account was sufficient notice to it and all other parties interested to render the decree of distribution, which was necessarily a part of the final settlement of the estate, conclusive, until reversed or set aside in some direct proceeding."

The present suit is a direct proceeding attacking the decree of the County Court approving the account of the administrator and discharging him from his trust.

1. Suffice it to say that the allegations of the complaint in this suit are sufficient to require a review of the final account of the administrator. A court of equity has jurisdiction to set aside a decree of a County Court approving and settling the final account of an administrator upon a proper showing thereof: *Froebrich* v. *Lane*, 45 Or. 13 (76 Pac. 351, 106 Am. St. Rep. 634, and note, 9 Prob. Rep. Ann. 164).

2. The trial court made no finding of fact in writing but orally. The conclusion of law and decree provided for the recovery of interest at the rate of 6

per cent per annum on $10,000 from May 1, 1919, to October 1, 1920, amounting to $850 and for interest upon such interest aggregating $1,173; also interest at the rate of 5 per cent per annum on $9,000 from October 1, 1920 to March 1, 1921, amounting to $187.50, and for interest upon such interest aggregating $213.48. This part of the decree should be modified as follows: The administrator should be charged with $177.98, the amount of interest charged by the bank on the note of H. L. Fitchard, deceased, for $2,800 and paid by the administrator after March 5, 1919, together with interest thereon at 6 per cent per annum from the date of approval of the final account, April 7, 1921, to date amounting to $81.87, aggregating the sum of $259.85. It is not equitable for the bank to be allowed interest on the note due from the estate during the time it had on deposit the large amount of funds belonging to the estate: There was charged on the note of H. L. Fitchard in favor of the bank, interest after there were sufficient funds belonging to the estate deposited to pay the note and all other claims against the estate. The circumstances of the case do not call for penalizing the administrator by compelling his estate to pay interest on the funds of the estate which interest was not received by the administrator.

3. "Upon general principles the personal representative is bound to render account of all interest or profit actually received by him out of the assets of the estate * * ." 24 C. J., p. 73, § 495. Citing cases from seventeen states and England.

The funds belonging to the estate could not safely be deposited in the bank for a definite time so as to draw interest according to the customary rule of the bank. The bank did not pay interest on such de-

posits except where the deposits were made for a definite time.

*Hayward* v. *Plant,* 98 Conn. 374, 390, 391 (119 Atl. 341) is to the following effect: As a general rule a trustee cannot profit by the use of trust funds in his keeping, but it is not improper for the executor of a will to place the cash funds of the estate during the settlement in the banking department of a supervision, which is authorized by law to receive and care for such funds merely because such trust company happens to be one of the executors; provided, however, that such company allowed the estate, for the use of the money, a rate of interest as high at least as the prevailing rate of interest paid by trust companies on like deposits in the locality during that period. Under such circumstances any balance earned by the trust company on the funds so deposited belongs to it as its reasonable profit.

In the case of *Matter of Johnson,* 57 App. Div. (N. Y.) 494, 501 (67 N. Y. Supp. 1004, 1009), we find the following:

"It does not follow because an executor is the owner of stock in a bank that he is forbidden from keeping any of his trust funds therein. The rule prohibiting a trustee from making profit out of the fund committed to him is to be given a reasonable construction. In the modern method of doing business, one who is the custodian of the funds of another is expected to keep them in a solvent bank or trust company. If some measure of profit incidently accrues to him because of his ownership of stock in the bank he ought not to be mulcted on that account. If the executors kept no more money on hand than the proper execution of their trust required, then the beneficiaries should not complain. If the account was kept substantially as it would have been in any other solvent bank in Palmyra or Wayne county un-

der a proper management of the fund, then the executors have performed their duty.''

4. A trustee is not chargeable with interest on the trust funds, unless he has used. them for his own profit, or invested them so as to produce interest, or suffered them to lie idle when they might have been invested, or needlessly delayed settlement and surrender of the property, or in some other way shown a want of diligence and good faith: *Martin* v. *Martin,* 43 Or. 119, 124 (72 Pac. 639).

5. It is the duty of an executor or administrator to prosecute the settlement of the estate with all reasonable diligence, in default of which he will be charged with interest on the presumption that he has used the funds: 11 Am. & Eng. Ency. of Law (2 ed.), 1218.

6. Where questions of doubt prevent an executor or administrator from lending or paying out money of the estate, he should not be charged with interest at least until the end of the year of his qualification: *Brooks* v. *Brooks,* 12 S. C. 464. A presumption that the executor or administrator used the funds of the estate arises where there has been a long delay in making the settlement: *Wyman* v. *Hubbard,* 13 Mass. 232.

7–9. What will constitute unreasonable delay in making a settlement, rendering the executor or administrator liable for interest, must depend upon the particular facts and circumstances of each case. The inquiry is whether, in view of the facts and circumstances, a prudent man, dealing with his own funds, for his own interest, would have retained the money unproductive or would have appropriated it as it was *prima facie* to be appropriated. The pendency or the just anticipation of suits, which, if the event of them was unfavorable, would seriously diminish the assets,

complicating the accounts if there was a distribution, may be a good reason for delaying the settlement, and, during the period of reasonable delay, may justify keeping the moneys without a liability for interest; or, if the amounts involved in such suits are not large, compared with the assets, the keeping without a charge for interest of a sum sufficient to answer the judgments which may be rendered in them. These and other causes developed by the particular facts of the case may excuse a delay in making settlement and relieve from liability for interest. But when no circumstances exist justifying the retention of the money unproductive, the personal representative must answer for interest. Diligence in making settlements and accounting to those entitled to receive is as high a duty, as imperatively demanded by law, as diligence in the collection, or in reducing to money by appropriate proceedings, when a legal necessity exists for the reduction of the property, real or personal, subject to administration: *Clark* v. *Knox*, 70 Ala. 607 (45 Am. Rep. 93).

10. The mere fact of delay in closing up an estate will not justify the court in charging interest. The principle deducible from the cases is that an executor or administrator is liable for interest when he has kept the beneficiaries out of the use of their money. Of this, delay is sometimes *prima facie* evidence, but it is not always so: *Dufour* v. *Dufour*, 28 Ind. 421; 11 Am. & Eng. Ency. of Law (2 ed.), pp. 1218 and 1219, notes.

11. If it would be inequitable to charge interest under the circumstances such charge will not be made: *Birkholm* v. *Wardell*, 42 N. J. Eq. 337 (7 Atl. 569).

12. The conditions existing during the time allowed for settling the estate are to be considered in determining whether the executor or administrator has been guilty of unreasonable delay in settling the estate: *Morris* v. *Morris,* 9 Heisk (Tenn.), 814; *Brent's Admr.* v. *Clevinger,* 78 Va. 12.

13. Unfortunate though it was the large disputed claim against the estate, was made by Mrs. Fitchard's father-in-law, the grandfather of her minor son, there was no way for the administrator or his attorney to know or to reasonably anticipate how soon or when the matter might be adjusted and the allowed claims all paid, and the funds distributed in accordance with the law.

Under the circumstances of the matter as it then stood, the administrator would not have been warranted in seeking an investment for any of the funds of the estate, or tying them up by a time deposit so they would not be available at any time for such payments and distribution.

For this court to hold otherwise would be to open the door for speculation with the funds of estates of decedents. Everyone knows that wherever there is a chance to gain in such investments there is also a chance to lose. Hirschberg is dead, and cannot explain the matter. The result of this case as a precedent is of vast importance. Business men and bankers should not be deterred from acting as executors and administrators. The writer has served in the capacity of a probate judge. In the comparison of the administration of the Fitchard estate with many others there is much to be commended in the manner in which Mr. Hirschberg handled its affairs.

14. Under the circumstances of this case, as detailed herein, the statute of limitations had not run.

Mrs. Fitchard had no full knowledge of all the facts in the case, as shown by the record, until about one month before the suit was instituted. She was inexperienced in business and relied implicitly upon the acts of Mr. Hirschberg in the management of the estate. Her ward is a minor. The plaintiffs have not been guilty of laches and should not be estopped from asserting their rights. See *Schumann* v. *Bank,* 114 Or. 336 (233 Pac. 860, point 4, 37 A. L. R. 1531); *In re Reed* (*In re Harmon's Est.*) 45 App. Div. 196 (61 N. Y. Supp. 50, point 2); Or. L., §§ 1285 and 1287; *Cross* v. *Baskett,* 17 Or. 84 (21 Pac. 47); *Re Chambers' Estate,* 38 Or. 131, 134 (62 Pac. 1013); *In re Herren's Estate,* 40 Or. 90 (66 Pac. 688).

15. Two causes of suit were withdrawn by plaintiffs. The other cause of suit consists of the claim of plaintiff that defendants should be charged with the loss suffered by the plaintiffs; that is, Margaret Fitchard, individually, and as guardian of her minor son, from certain Warm Springs Irrigation District bonds of the face value of $8,000.

It is alleged in the third cause of suit that Hirschberg, as administrator of the estate of Harold L. Fitchard, purchased bonds issued by Warm Springs Irrigation District, of the face value of $8,000, and represented to Margaret Fitchard, individually, and as guardian, that he paid therefor approximately ninety-six or ninety-seven cents on the dollar, on the face value thereof and, "further represented to this plaintiff, Margaret Fitchard, in order to induce her individually and as guardian, as aforesaid, to ratify the purchase of said bonds, that the said bonds were a high grade, first class investment; that the security behind them was unquestioned; that they were amply secured to make the payment of both principal and

interest a certainty and were a safe investment of such funds.'' And that plaintiff relied upon these representations and formally ratified the purchase of such bonds. That the bonds were not well secured and generally the representations made were untrue, and that Hirschberg, by reasonable inquiry could have ascertained the fact of their untruth. It is further alleged that the account of Hirschberg, which indicated that he had paid cash to Margaret Fitchard, individually, and as guardian in settlement of his trust, was untrue and that he, in fact, delivered the Warm Springs Irrigation bonds instead of cash.

It was further alleged that the bonds were not worth more than seventy-five cents on the dollar at the time they were purchased; that Margaret Fitchard later sold bonds for that figure; and also alleged that said Hirschberg and the defendant bank acted together on the transfer of the bonds, and that they both profited in the transaction and were unjustly enriched thereby in the sum of $1,619.20, which sum was lost to plaintiff. It is sufficient to state in regard to the latter allegation of unfairness that it is not sustained by the proof. The testimony indicates otherwise.

The answer of the executor to this cause of suit averred that Margaret Fitchard ordered from the First National Bank of Independence, bonds of the Warm Springs Irrigation District of the face value of $8,000, and pursuant to said order, the bank purchased such bonds from a reputable bond house of Portland and paid therefor the sum of $00.9584 per dollar of face value, plus accrued interest, and that the same were delivered to Margaret Fitchard and accepted by her.

It was admitted that Hirschberg advised Margaret Fitchard that in his opinion the bonds were a good investment and well secured. All other allegations in respect to the alleged representations and their falsity, were denied. It is affirmatively alleged and supported by proof that before the said bonds were purchased Hirschberg had bought $20,000 in like bonds for the First National Bank of Independence, which bonds the bank still holds. It was admitted that Hirschberg's final account set forth that cash had been paid to the distributees, and it was averred that the said sums had been paid in cash, and that the purchase of the bonds was made by Margaret Fitchard herself, out of the funds which she had received from the distribution of the estate.

Other allegations of the complaint were denied and it was specifically denied that Hirschberg, or the bank, profited in any way from the sale of the bonds; and it was alleged that they received nothing therefrom, except $120, as the bank's usual commission from the bond house.

The answer of the bank was substantially similar, except the bank denied any knowledge as to the proceedings in regard to the Harold Fitchard estate.

Mrs. Fitchard, after the lapse of some time, understands or remembers that Hirschberg turned over Warm Springs Irrigation bonds to her as her share of the estate and the share of her minor son. In this she is in error. Mrs. Fitchard had been furnished, by her husband, with a checking account in the bank for expenses, and we think at the time the checks for the amount of such shares were delivered to her and indorsed by her, and credited to the respective accounts in the bank; and afterward, when she signed checks for the payment of the bonds, that

she understood, or at least would be presumed to have known, that the payments for the respective shares of the estates were made to her in money and that she was making the purchase of the bonds for herself and as guardian of her minor son. After such payments were made the administrator did not have control of those funds and acted for Mrs. Fitchard in an advisory capacity and rendered friendly assistance in making the investments. The testimony shows that he acted in entire good faith in the matter.

On August 5, 1922, Mrs. Fitchard reported to the County Court in the matter of the guardianship. This report specifically stated that Mrs. Fitchard, as guardian, had received from Hirschberg, as administrator of the Harold Fitchard estate, the sum of $4,453.67 on March 12, 1921, and further stated that on March 17, 1921, she had drawn voucher on the Independence National Bank in the sum of $4,369.05 for the purchase of Warm Springs Irrigation District bonds; and further, recited that she had petitioned on April 14, 1921, for the approval of the investment.

The Warm Springs Irrigation District bonds, purchased by Mrs. Fitchard, carried a guarantee of payment of interest for five years by the State of Oregon and they were certified as a proper investment for trust funds by the State of Oregon, under the statute relative thereto. The bonds matured January 1, 1926, and interest was paid on the bonds until practically that date by the State of Oregon. Thereafter default was made by the district in respect to payment of interest and the payment of the principal. It is hoped at this time that the bonds will be paid eventually in full, although they undoubtedly repre-

sent a slow asset. Mrs. Fitchard sold her bonds at seventy-five cents on the dollar in 1923.

It is plain that when the bonds were purchased there was in the minds of the business community a somewhat exalted opinion of irrigation district bonds. The rate of interest was alluring. Mr. Hirschberg used the same business judgment in advising Mrs. Fitchard as he did in purchasing $20,000 of such bonds for the bank. Mr. Hirschberg should not be held responsible on account of the bonds afterward depreciating, nor on account of such investment. Neither he nor the bank made any profit on the sale of the bonds, except the commission of $120 paid to the bank.

Mrs. Fitchard claims that Mr. Hirschberg informed her, in effect, that the bonds were "guaranteed by the state and the state would pay the interest." We think the information she received was, in substance, that the state guaranteed and would pay the interest.

16. Mr. Mix of the bank, at Mr. Hirschberg's request, wrote Ralph Scheeloch & Company, bond dealers of Portland, Oregon, on March 12, 1921, inquiring for a good investment for $8,000, for one of their customers. On March 15, 1921, the Scheeloch Company wrote the Independence Bank saying that "in accordance with your order given our Mr. Rorapaugh, we have shipped $8,000 Warm Springs Irrigation District, 6 per cent bonds, maturing January 1, 1926, with draft for $7,767.20 attached covering amount due." A selling commission of $120 was sent the Independence Bank on the business, as indicated in the letter of March 15, 1924.

Mrs. Fitchard knew nothing about the commission paid to the bank on account of the purchase of the bonds, until about the time of this suit. While it

was no doubt a custom of the bank to receive such commission, or concession, in like transactions, we cannot approve of the administrator through his bank, making this secret profit, so closely connected with the affairs of the estate which he was then administering.

The plaintiffs are entitled to recover $120 so paid, with interest thereon at 6 per cent per annum from April 7, 1921, amounting to $54.90, aggregating $174.90. That part of the decree of the trial court awarding plaintiffs for the loss on the Warm Springs bonds is reversed.

It would be useless to remit this case to the County Court to recast the final account. The figures are all in the record and the matter can be finally determined.

The decree of the Circuit Court will be modified as above indicated, so that plaintiffs will recover the sum of $259.85 and the further sum of $174.90, making the aggregate sum of $434.75.

Considering all the facts and circumstances of this suit, each party will be required to pay their own costs upon this appeal.                          Modified.

RAND, C. J., and BROWN and BELT, JJ., concur.

Rehearing denied February 13, 1929.

ON PETITION FOR REHEARING.

(274 Pac. 505.)

For appellants *Messrs. Dey, Hampson & Nelson* and *Mr. George L. Buland.*

For respondents *Mr. James L. Conley* and *Mr. I. N. Smith.*

BEAN, J.—Petitions for rehearing necessitate an explanation of the original opinion found in 272 Pac. 906, paragraph (2) at page 910.

It is believed that Hirschberg as administrator had on hand in his bank about $9,000 of funds belonging to the estate of Harold L. Fitchard, deceased, and at the same time charged interest on the note of the bank for $2,800 against Harold L. Fitchard's estate; such interest amounting to $177.98; that Hirschberg as such administrator should be charged with interest on the said funds in the bank, amounting to about $9,000, to the amount of $177.98, equal to the amount of interest charged by the bank on the Harold L. Fitchard note, together with interest on said sum of $177.98, at 6 per cent per annum from April 7, 1921, to date of former opinion amounting to $81.87, aggregating $259.85. This was the intent of the former opinion.

We think the administrator could safely have applied sufficient of the funds on hand to the payment of the Harold L. Fitchard note at any time after March 5, 1919.

With this explanation the petitions for rehearing will be denied. REHEARING DENIED.