Argued at Pendleton April 7; affirmed as modified May 11, 1943

IN RE STEPHENSON'S ESTATE
# BROWN *v.* STEPHENSON
(137 P. (2d) 289)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*George H. Brewster,* of Redmond (Cunning & Brewster, of Redmond, and L. M. Bechtell, of Prineville, on the brief) for appellants.

*Donald M. Graham,* of Prineville, for respondent.

ROSSMAN, J.  This is an appeal by Ethel McGreer and Warren Brown, administrator de bonis non of the estate of Lee C. Stephenson, deceased, from an order of the circuit court which disallowed many items of the final account of Milton T. Stephenson, who is the removed administrator of the estate, and surcharged his account $1,538.43.  In addition, the order directed Brown to pay to George L. Bernier, who was attorney

for the removed administrator, $125 as compensation for his professional services. The appellants contend upon this appeal that the surcharge is insufficient and that the order for the attorney fee is erroneous.

Lee C. Stephenson died November 3, 1937. Surviving him were, among others, the aforementioned Milton T. Stephenson, a son, who qualified as administrator of his deceased father's estate December 28, 1937. He was removed from that office August 20, 1940, but before his removal he assigned his interest in the estate to Ethel McGreer, one of the two objectors; hence, her interest. Upon the removal of Stephenson, the aforementioned Warren Brown was appointed administrator de bonis non.

A document, which purports to be an inventory and appraisement, indicates that the deceased's estate consisted entirely of personal property and that it was valued at $3,350. The principal asset was a promissory note secured by a real estate mortgage. The other items were livestock and some tools and machinery useful upon a farm.

The removed administrator, to whom we shall hereafter refer as the respondent or Stephenson, filed no reports whatever until he submitted the final account which we shall shortly review. Immediately upon his appointment, Stephenson proceeded to sell the tools, machinery and livestock which belonged to the estate, but in so doing he neither applied for nor received an order from the probate court. After he had made the sales he made no report of them, nor did he make any entries in account books or other papers. He did not deposit in any bank the proceeds of the sales, but, to the contrary, put the proceeds in his pocket and spent them for his own purposes. One of the participants in

the case described Stephenson as a "hill-billy fellow." Evidently his failure to measure up to the required standards was not due to dishonesty, but to inaptness for any duties which required record keeping and an observance of the distinction between "thine" and "mine."

After Stephenson's removal as administrator and Brown's appointment, the cause was transferred to the circuit court. April 1, 1941, the latter entered an order which directed the respondent to appear in that court not later than April 28 and render an accounting. Upon the appointed day he appeared, but submitted no accounting. At that juncture the court entered an order which adjudged Stephenson guilty of a contempt of court, but permitted him to purge himself of the offense by filing an accounting on or before May 26, 1941. May 27, 1941, Stephenson submitted the account which we have already mentioned. Shortly the objectors filed their objections and thus was precipitated the controversy which is now before us. After the circuit court had received the evidence which the parties offered, it entered the order from which this appeal was prosecuted.

Parts of the order of the circuit court in which the objectors acquiesce and which they do not attack (1) held that the administrator during his incumbency received a total of $4,290.67 ($72.50 more than his final account acknowledged); (2) charged him with the receipt of $662.50 from the sale of livestock, tools and machinery ($72.50 more than his account acknowledged); (3) disapproved a claim against the estate presented by one Fred Payne in the amount of $380.05 which Stephenson had paid, and charged him with its

amount; (4) disapproved Stephenson's payment of $44.73 of the claim of the Portland Loan Company, and charged him with that sum; (5) disapproved to the extent of $4 two minor disbursements made by Stephenson for the care of the livestock; and (6) disapproved disbursements amounting to $447.15 for most of which Stephenson could give no explanation whatever, and charged him with that sum. The additional sums mentioned in items 1 and 2 are not two sums, but the same money. That sum, when added to items 3, 4, 5 and 6, totals $948.43.

The first assignment of error is predicated upon a contention that the respondent should have been charged with interest upon moneys belonging to the estate which he converted to his own use. The appellants contend that he should have been charged interest upon not less than $1,400, beginning with at least January 1, 1939.

The circuit court found from evidence, which, we believe, warranted the conclusion, that (a) Stephenson received in December, 1937, a payment of $365.02 upon the aforementioned note; (b) in December, 1938, he received upon the same instrument $527.35; and (c) he received in the early part of 1938 $662.50 from the sale of tools, machinery and livestock. Those receipts total $1,564.87, and seemingly constituted all of the sums received by him prior to January 1, 1939.

Stephenson deposited to the credit of the estate in a Prineville bank the aforementioned sum of $365.02, which he received in December, 1937, and the aforementioned sum of $527.35 which he received in the next year, but made no further deposits until five months before his removal.

The circuit court found from evidence, which warranted the finding, that Stephenson properly made the following disbursements:

| | | |
|---|---|---:|
| November, 1937, | Filing fees in probate court | $ 16.50 |
| December, 1937, | Payment upon charges for burial of deceased | 150.00 |
| January, 1938, | Premium upon administrator's bond | 42.40 |
| January, 1938, | Hay for livestock | 31.10 |
| February, 1938, | Hay for livestock | 13.00 |
| February, 1938, | Hay for livestock | 25.00 |
| March, 1938, | Care of livestock | 6.00 |
| March, 1938, | Hay for livestock | 13.00 |
| April, 1938, | Care of livestock | 6.00 |
| | Total | $303.00 |

The disbursements just enumerated when deducted from the amount which Stephenson received prior to January 1, 1939, ($1,564.87), leave a balance of $1,261.87 which, therefore, was the amount of money belonging to the estate which Stephenson should have possessed January 1, 1939. As we have seen, he deposited to the estate's credit only $892.37 of his total receipts. He made all of his disbursements by check, and there should have been in the bank to the credit of the estate January 1, 1939, $589.37. On that day, however, the balance was $481.43. The discrepancy was due to the fact that Stephenson, besides making the above-mentioned proper withdrawals, made others. The circuit court found that he was not entitled to credit for the additional disbursements, and Stephenson does not challenge the court's conclusion.

After January 1, 1939, and prior to March 11, 1940, Stephenson made the following disbursements which the court held were proper:

October,    1939, Premium on administrator's
                bond _____$42.40
December, 1939, Filing fee in circuit court _____  5.40

        Total  _____$47.80

In that period he deposited nothing to the estate's credit in its bank account. We selected March 11, 1940, because on that day, pursuant to an accord, Stephenson accepted $2,735.80 as satisfaction in full of the balance owing upon the mortgage-secured note and deposited the money in the aforementioned bank account. About the same time he was compelled to share his authority over the account with another.

We have just seen that after January 1, 1939, and up to March 11, 1940, disbursements aggregating $47.80 were properly made. That sum when deducted from $1,261.87 leaves a balance of $1,214.07. The same amount when deducted from $589.37, which should have been in the bank January 1, 1939, leaves $541.57. But at the close of business on March 10, 1940, the actual bank balance was only $89.36. The reason for that situation was the fact that Stephenson had made many withdrawals in addition to those we mentioned. The circuit court refused to allow him credit for them, and Stephenson does not challenge the propriety of its action. It, however, allowed him credit for $1.08 service charges exacted by the bank which carried the estate's account. The proper disbursements made by Stephenson prior to March 10, 1940, therefore, total $351.88 ($303 plus $47.80 plus $1.08). In that period of time he received $1,564.87 and at the close of the period had in the bank a balance of $89.36. The proper disbursements ($351.88) when added to the balance $89.36 total $441.24. That sum when deducted from his receipts of $1,564.87 leaves $1,123.63, which somehow disappeared prior to March 11, 1940.

Since the appellants claim that Stephenson converted much of the estate's money to his own use and should, therefore, be charged with interest, let us see what happened to the sum of $1,123.63 just mentioned.

While Stephenson was properly making the disbursements which we have mentioned, he made a great many others with checks drawn against the estate's bank account which he was unable to explain. Virtually all of these checks were marked by him "Estate Expense" when he wrote them. Since they were drawn against the estate's bank account they were signed, "L. C. Stephenson Estate by Milton Stephenson, Administrator." The payee of most of these checks was either the administrator himself, one of his brothers, a friend, or a place called Cecil's Pastime Pool. When asked for an explanation, Stephenson answered: "Some of them I can't account for—I don't know where they come from." A large number of these checks were issued by Stephenson when he was in Malheur County upon a mission which he did not explain; these have become termed the Malheur County checks. When questioned about them, he replied: "I understand those checks that were given in Malheur County, I wouldn't answer for those. * * * It was cashed in Malheur County and I can't explain it." When his attention was directed to the fact that he wrote upon the face of these checks, "Administrator's expense", he explained: "You can mark those all, so far as I am concerned, 'Drawn from the estate's funds for my personal fund' is the only way I will answer." He refused to give further information and there the matter stands. The circuit court refused to allow him credit for these checks; they total $447.15. Without reviewing other details, we express our concurrence in

the circuit court's conclusion. Obviously, the estate's money in the bank which Stephenson diverted to his own purposes was converted by him. It will be remembered that he received $662.50 as the proceeds from the sale of the estate's tools, machinery and livestock. He did not deposit that money in the bank account, but spent it as though it were his own. He made no memoranda of the expenditures, nor did he make any of the amounts for which he sold the items just mentioned. The conclusion is inescapable that he converted the $662.50 to his own use.

■ In a preceding paragraph we showed that the estate would have possessed on March 11, 1940, $1,123.63, in addition to the bank balance of $89.36 had Stephenson not made his unwarranted disbursements. It is clear that he converted to his own use $1,123.63 of money belonging to the estate.

■■ An administrator who converts money belonging to an estate to his own use renders himself liable, not only for the money which he wrongfully took, but also for lawful interest thereon from the day of conversion: *Fitchard v. Hirschberg's Estate et al,* 128 Or. 317, 272 P. 906, 274 P. 505; Woerner, The American Law of Administration, 3d ed., p. 1764; and 30 Am. Jur., Interest, p. 18, § 21. We believe that the circuit court should have charged Stephenson with interest at the rate of six per cent per annum upon $1,123.63 from January 1, 1939.

The second assignment of error attacks the part of the order under review which directed Brown, the administrator de bonis non, to pay out of the assets of the estate an attorney fee of $125 to the aforementioned George L. Bernier, who served Stephenson as

attorney during his incumbency of the office of administrator. The words of the attacked order are:

"* * * This should be paid to him by the administrator de bonis non, Warren Brown, from the funds of the estate since no funds now remain in possession of Milton T. Stephenson which belong to the estate. It is, therefore, ordered that Warren Brown, administrator de bonis non, be, and is hereby required to pay from the funds of the estate of Lee C. Stephenson, the sum of $125.00 to George L. Bernier, and take credit therefor in his accounting upon the estate."

An administrator, in the settlement of his accounts, is entitled to an allowance for all necessary expenses incurred by him in the management of the estate, and since the services of an attorney are essential for proper administration, the allowances made to the administrator properly include a reasonable amount for the attorney's compensation. Therefore, the order under review could have included an allowance to Stephenson for an attorney's compensation had Stephenson possessed any assets of the estate out of which to make payment, or had he paid an attorney. But, as we have seen from the words above quoted, Stephenson possesses nothing belonging to the estate, and it is conceded that he paid Bernier nothing. Further, as is seen from the quoted words, the allowance was made, not to Stephenson, but to Bernier. It affected the account, not of Stephenson, but of Brown. The order directed the latter, as the administrator de bonis non, to make the payment to Bernier, and in the event he did so he would be entitled to credit therefor in the account he eventually files. Thus, we see that the part of the order now under consideration has nothing to do with Stephenson's accounts. It was in effect a

forerunner of an accounting between Brown and the estate. We are satisfied that the order upon Brown to pay Bernier has no proper place in Stephenson's accounting with the estate, and that error was committed when it was included therein. We add that it is doubtful, in our opinion, whether Bernier was entitled to any fee whatever. His services were slight in extent and their value, whatever it may have been, was negatived by at least one highly improper act upon his part: He sought to serve two masters; he accepted a fee from a claimant for collection of a claim against the estate. Certainly, that act upon his part was a breach of his duty to the estate. It may be that had he made an adequate investigation of the claim, the collection of which he thus improperly procured, it might have been shown to have lacked merit. We conclude that the direction for the present administrator to pay Bernier $125 was erroneous.

█ The third assignment of error is based upon a contention that the claim of the Portland Loan Company, a corporation, which amounted to $395.44 did not comply with the demands of § 19-703, O. C. L. A., and hence should not have been paid. The section of our code just mentioned says:

> "Every claim presented to an executor or administrator shall be verified by the affidavit of the claimant, or someone on his behalf, who has personal knowledge of the fact, to the effect that the amount claimed is justly due, * * *."

The attacked verification says:

> "I, N. D. Goodrich, being first duly sworn, depose and say that the Estate of Lee C. Stephenson, deceased, is indebted to The Portland Loan Company upon an account for money loaned furnished to the said deceased at the instance and request of

the deceased, and that I have personal knowledge of the same. That an itemized account of said claim is hereto attached and there is justly due thereon to The Portland Loan Company the sum of $ * * *.''

Attached to the claim was the note and the mortgage which secured its payment. The note bore the signature of the respondent as well as that of his deceased father.

Goodrich did not state in his verification what office, if any, he held with the Portland Loan Company. It was he, however, who paid Bernier the illegal fee which we mentioned.

The appellants argue:

"Where a person other than the claimant verifies a claim he must state the reasons why the claimant does not verify it, and that it is made in behalf of claimant."

Obviously, some person had to make the verification on behalf of the claimant, which was a corporation, and hence the only question that remains is whether the fact that Goodrich did not state his relationship to the loan company denied validity to the claim. Section 19-703, O. C. L. A., contains no requirement that the individual who verifies a claim must disclose his authority. That section requires only that the verification be made by someone "who has personal knowledge of the fact." Goodrich met that requirement by swearing: "I have personal knowledge." It is our belief that the verification and claim met the statutory requirements: 34 C. J. S., Executors and Administrators, p. 206; and 24 C. J., Executors and Administrators, p. 360.

The fourth assignment of error is based upon a contention that Stephenson's account was entitled to no credit for the interest accruing after the decedent's

death, which the respondent paid upon the note signed by the decedent and held by the Portland Loan Company. The appellants contend that Stephenson should have discharged the note the moment that funds were available. The note was $300 in denomination and bore interest at the rate of three per cent per month. Its payment was secured by a chattel mortgage. We mentioned this note in considering the last assignment of error. It was the personal property, pledged to secure payment of this note, which the respondent sold for the sum of $662.50 which we have already mentioned.

At the time of the decedent's death a balance of $201.50 remained unpaid upon the principal of the note. The latter bore the signature, not only of the decedent but also of two of his sons, one of whom is the respondent. The sons, however, were not the borrowers; they signed the instrument pursuant to the request of the loan company which feared that the father would not outlive the debt.

The loan company did not file its claim until April 7, 1939. Stephenson allowed the claim April 21, 1939, but did not pay it until May 16, 1940. At the time he paid $395.44 in satisfaction of the debt. The appellants point out that when Stephenson was appointed administrator he had sufficient money in his possession to discharge this obligation. In a preceding paragraph we reviewed the evidence showing the funds which Stephenson possessed in the early days of his administration. Some of it was received by him before he qualified.

From the memorandum decision of the trial judge, we now quote:

"It is my conclusion that the administrator could not have paid the amount of the note to Portland

Loan Company until claim was presented to him
on account thereof. It appears that he could not
pay it immediately after presentation and allow-
ance thereof but would be obliged to withhold such
payment until he should make a semi-annual report
to the court and the payment then be authorized by
the court. His next semi-annual report would be
due within the first ten days of October, 1939. As-
suming that the report had been made on October
1, 1939, the court would pass upon an application
for authority to pay this claim at its next regular
meeting which would be on Wednesday, October 4,
1939.''

■ Based upon the reasoning just stated, the circuit
court held that Stephenson should have paid the note
on October 4, 1939, and therefore disallowed him the
$44.73 interest which accumulated between that day
and May 16, 1940, when he actually made payment.
Had Stephenson been a cautious administrator he
would have been justified in taking the course which
the quoted words suggest. The fact that he filed no
semi-annual reports and never sought the advice of
the court does not change his liability in the instance
under consideration. We concur in the circuit court's
disposition of this claim; that is, that Stephenson be
allowed credit, not for $395.44, the amount which he
actually paid, but for $350.71, the amount which he
would have paid had he timely made payment. We
cannot concur in the appellant's contentions; we think
that the course outlined by the memorandum opinion
was available to Stephenson.

The fifth assignment of error challenges payments
made by Stephenson for (1) the purchase price of some
hay which he said he fed to the estate's livestock; (2)
service charges exacted by the bank which carried the

estate's account for checks written by Stephenson; and (3) the premiums exacted by the American Surety Company, surety on Stephenson's bond, for more than one year.

■ The circuit court disallowed Stephenson credit for some of the amounts which he paid for hay. The total amount of the bank's service charges was $1.08. In any event, Stephenson is entitled to credit for a part of it. The contentions about the premiums paid to the surety company urge that Stephenson should have closed the administration of the estate within one year's time and thus have obviated premium charges for more than that period. We have considered the record carefully, but are not convinced that this assignment of error possesses any merit. We add that Stephenson was allowed nothing whatever for his services.

The above disposes of all of the assignments of error. As we have indicated, the first and the second possess merit. Stephenson should be charged with interest upon moneys belonging to the estate which he converted to his own use, and the amount should be determined by computing six per cent interest upon $1,123.63 from January 1, 1939. The order for the payment by the administrator de bonis non of $125 to George L. Bernier was erroneous and should be omitted from the order attacked by this appeal. The third, fourth and fifth assignments of error possess no merit.

The order of the circuit court is, therefore, modified in the particulars just indicated. In all other respects it is affirmed. Costs and disbursements will be allowed to the appellants.