BATH SAVINGS INSTITUTION, in equity,

*vs.*

BARZILLAI W. HATHORN, Administrator, and another.

Sagadahoc.    Opinion June 7, 1895.

*Trust.    Gift.    Savings Bank Deposit.*

A gift must be executed by delivery; a trust by declaration.

An express trust of personal property may be created or declared by parol. Its terms must be clearly established and show an executed gift, so that the equitable title shall have passed effectually to the donee as in the case of a gift inter vivos.

In such a trust, the real title vests in the donee, while the legal title, perhaps carrying the control, may be placed elsewhere; but it is necessary that the donor, who declares the trust, should create an estate for his cestui that is no longer his own. The donor may retain the legal title, giving him the control, but for the benefit of his cestui according to the terms of the trust. The trustee thereby becomes merely an agent to administer the trust and is subject to the directions of a court in equity.

An entry on the books of a savings bank in the name of a donor, " in trust for the donee," is not conclusive evidence by itself of an absolute, indisputable gift; but extrinsic evidence is competent to control its effect.

*Held*; in this case, that all the declarations, acts and conduct of the donor are consistent with the presumption arising from the entry itself, and show a completed trust in favor of the donee.

ON REPORT.

Bill in equity, heard on bill, answers and proof.

This was a bill of interpleader brought by the Bath Savings

Institution against the defendant, Hathorn, as administrator of the estate of Henry Walker, deceased, and against Alice B. Files, to determine the title to a certain deposit in that institution.

The course of procedure adopted by agreement between all parties was this : Each defendant filed an answer and then by agreement a decree of interpleader was filed, and by further agreement it was stipulated that the answers should be taken as the pleadings in the case and the cause set down for hearing on bill, answers and proof, and that Miss Files be regarded as plaintiff in the continuance of the suit. It thus became, practically, a suit in equity by Alice B. Files against the administrator of Henry Walker's estate. The facts in the case were practically undisputed.

It appears that Henry Walker, died October 2nd, 1891, leaving neither wife nor children, his wife having died nearly six years before. Their home was in Woolwich, opposite Bath, and Miss Files, who was a second cousin of Mrs. Walker, frequently visited there, and Mr. and Mrs. Walker often visited the Files family in Winslow, the two families being in close and intimate relations. On July 1st, 1882, Mr. Walker deposited the sum of $700 in the Bath Savings Institution in his own name, but "in trust for Alice B. Files," and took out a depositor's book in that form. At the time of making the deposit he had a conversation with the treasurer of the bank as to its form, and the treasurer told him that if he put the book in anyone's name, in trust for anyone, it would go to that person at his decease, and Mr. Walker said he wished it to, that he wished it to go to Miss Files. In accordance with his direction the signature book, which all depositors are required to sign, was signed by Mrs. Potter, then a clerk in the bank, in the same form "Henry Walker, in trust for Alice B. Files, of Woolwich." Mr. Walker, retained the bank book in his possession ever after, but never drew any part of the principal or interest therefrom, but took the book to the bank occasionally to have the accrued dividends added. On one occasion very soon after the deposit was made, Miss Files' sister, now Mrs. White, was visiting at his house, and saw the book among some other papers that he

happened to be examining; she took it up and looked at it; saw the form of entry, and he told her then : "Yes, that is for Alice at my decease, and the next will be for you," and Mrs. White communicated this information to Alice, her sister, immediately on her return home from the visit, who expressed her satisfaction thereat.

Mrs. Trott, who was in the family as housekeeper for about six years, going there before Mrs. Walker's death, saw the book on three different occasions, and Mr. Walker explained to her also when she spoke of its being in trust, that the book was for Alice, and again just a few months before his death, after he had the July dividend added, he was examining the book, spoke of it as Alice's bank book, and asked Mrs. Trott to guess how much it had gained. She told him she supposed it was between ten hundred and eleven hundred dollars, and his reply was "you are pretty good for guessing. You guessed pretty nearly right, and that will be a great help to Alice, won't it, Mrs. Trott?"

*Orville D. Baker and Leslie C. Cornish*, for Alice B. Files.
*Charles .W. Larrabee*, for defendant, Hathorn.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WHITE-HOUSE, STROUT, JJ.

HASKELL, J. Henry Walker of Woolwich, died solvent and intestate October 2, 1891, leaving brothers and sisters and nephews and nieces, but neither wife nor children. His wife died January 1, 1886. She was a cousin to the father of the plaintiff, Alice B. Files of Winslow, who knew the old people as uncle and aunt and seems to have been always welcome at their house and a favorite with them.

On July 1, 1882, Mr. Walker deposited in the Bath Savings Institution $700, "in trust for Alice B. Files," saying, in substance, that he wished it to go to her at his decease. That deposit remained intact during Mr. Walker's life, and at his death amounted to something over $1000. He always retained the book, and it was found among his papers by his administrator, the defendant, who now claims the deposit as a part of his

estate. The evidence shows that Mr. Walker intended the deposit for Alice at his decease, but never communicated his intention to her.

The authorities all say that a gift inter vivos must be complete. The donor must divest himself of all dominion over the thing given, and the title to it must pass absolutely and irrevocably to the donee. *Northrop* v. *Hale,* 73 Maine, 66 ; *Dale* v. *Lincoln,* 31 Maine, 420 ; *Robinson* v. *Ring,* 72 Maine, 140 ; *Augusta Savings Bank* v. *Fogg,* 82 Maine, 538.

A voluntary trust is an equitable gift, and, like a legal gift inter vivos, must be complete. A declaration of trust as effectually passes the equitable title of the fund to the cestui, as a gift inter vivos passes the legal title to the donee. The distinction between them is of a technical nature. In a trust, the real title vests in the donee, but the legal title, perhaps carrying control of the property, may be placed elsewhere ; while, in a gift, both the real and legal title instantly fall to the donee. It is not necessary, therefore, that he who declares a trust should divest himself of the legal title, if, perchance, he so does it as to transfer the real or equitable title to the cestui ; for then he creates an estate really no longer his own. He may retain the legal title, giving him the control, but for the benefit of the cestui, according to the terms of the trust. His control becomes subject to the direction of courts of equity, that always supervise the administration of trusts. They are the children of equity ; they spring from it, and cannot survive without its aid and control. The trustee is merely an agent to administer them, and nothing more.

An express trust of lands can only be created by some writing signed by the party or his attorney, R. S., c. 73, § 11, but a trust of personal property may be created or declared by parol. It is necessary, however, to clearly establish the terms of it, and show an executed gift, so that the equitable title shall have passed to the donee as effectually as a gift inter vivos. *Gerrish* v. *New Bedford Institution for Savings,* 128 Mass. 159 ; *Dresser* v. *Dresser,* 46 Maine, 48.

Says Lord Cranworth : "If a man chooses to give away any-

thing which passes by delivery, he may do so, and there is no doubt that, in the absence of fraud, a parol declaration of trust may be perfectly good, even though it be voluntary. If I give any chattel, that of course passes by delivery ; and if I expressly or impliedly say I constitute myself trustee of such and such personal property for a person, that is a trust executed, and this court will enforce it in the absence of fraud, even in favor of a volunteer. . . . The authorities all turn upon the question whether what took place was a declaration of trust or merely an imperfect attempt to make a legal transfer of the property. In the latter case, the court will afford no assistance to volunteers ; but, when the court considers that there has been a declaration of trust, it is a trust executed, and the court will enforce it, whether with or without consideration." *Jones* v. *Lock*, L. R. 1 Ch. App. 25.

In this case, the deposit is in the name of the donor, "in trust for the donee." Standing alone, this entry does not work an absolute, indisputable gift in the form of a dry trust, that is, a trust without limitation or condition, that may be terminated at the will of the cestui ; but extrinsic evidence is competent to control its effect. *Brabrook* v. *Savings Bank*, 104 Mass. 228 ; *Clark* v. *Clark*, 108 Mass. 522 ; *Powers* v. *Provident Institution*, 124 Mass. 377 ; *Stone* v. *Bishop*, 4 Clif. 393 ; *Northrop* v. *Hale*, 72 Maine, 275.

The evidence discloses that, at the time the donor made the deposit, he expressed a desire that the donee should have the money at his death. That certainly shows no intent to part with the legal title at an earlier day. He is said to have subsequently made talk of the same purport ; but he neither informed the donee of the deposit, nor made any effort, nor did any act to apprise her of it, or of his intention concerning it. The deposit on his part was both voluntary and secret. Information of it may have been communicated to her by others, but never at his request, nor with his knowledge. What evidence then operates to pass the equitable title in the deposit to her? He had consummated no contract with her. His intentions were kept in his own breast. He could have withdrawn the money at any time

and have made a new disposition of it, and she may not have been the wiser, so far as he knew.   It is just as essential, to establish the trust sought to be set up here, to prove some act on the part of the donor that shall operate to pass the equitable title to the donee, as it is to prove delivery in a gift inter vivos. Both require the same essentials.   In both, some title must pass from the donor, differing only in degree.   A gift must be executed by delivery.   A trust by declaration.

In *Augusta Savings Bank* v. *Fogg*, 82 Maine, 538, the donor deposited a sum of money in the name of the donee, subject to his own order, with intent that, at his death, it should go to the donee.   No trust was claimed or shown.   It was an unexecuted purpose, an ineffectual attempt at testamentary disposition.

In *Parcher* v. *Savings Institution*, 78 Maine, 470, a depositor caused to be entered upon the bank ledger, words in substance, "payable also to Mrs. Leavitt in case of my death," and it was held no gift.

. In *Curtis* v. *Portland Savings Bank*, 77 Maine, 151, the entry of "Subject also to" the donee was held to constitute no gift ; but that a subsequent delivery of the bank book completed the gift.

In *Barker* v. *Frye*, 75 Maine, 29, a deposit in the name of the donee, subject to the donor during life, afterwards changed by erasing words  giving the donor any control of the fund, and after notice to the donee of the change and that the bank book would be delivered to him the first time they met, and after his reply requesting that the book be sent to him, which the court says "was an acceptance of the gift," it was held that the gift was complete.

The same doctrine is held in *Northrop* v. *Hale*, 73 Maine, 66 ; *Robinson* v. *Ring*, 72 Maine, 140 ; *Drew* v. *Hagerty*, 81 Maine, 231 ; *Parkman* v. *Suffolk Savings Bank*, 151 Mass. 218.

All of our cases require something more than a mere intention to give, a promise to give, or an expectation to give. Benevolence alone will not do.   There must be beneficence also. The mystery sometimes supposed to exist about a trust, cannot

change the nature of a transaction. A voluntary trust is a gift, and requires all the essentials of a plain gift to sustain it.

In *Dresser* v. *Dresser*, supra, a writing specifying the terms of a voluntary trust, and a delivery of the trust property so that the dominion of the donor over it was thereafter lost, is a good example of a trust of this sort.

In *Alger* v. *North End Savings Bank*, 146 Mass. 418, the donor made a deposit similar to the one under consideration. It was in his own name as trustee for the donee, his housekeeper, who claimed the deposit as a payment for her services. It was shown that shortly before his death he told her : "I put it in for you," "that money is yours," and the court held that the judge, who tried the case, was authorized to find a perfected gift, if he chose to do so.

Some of the cases are in conflict concerning the question now under consideration, more in the application of the law to the ever varying facts in the numerous cases than otherwise ; but our own cases are all consistent, and squarely hold to the doctrine that a trust in personal property may be created by parol, and that a deposit in bank in the name of another may be explained or controlled by evidence outside the written terms of the deposit. In this case the terms of the deposit clearly show an intended trust in favor of the donee, but may be controlled or limited by extrinsic evidence. This evidence confirms the trust, showing that it should cease at the death of the donor, and that the legal title should then pass to the cestui. When the deposit was made, the treasurer of the bank told the donor that, at his decease, the money would go to the donee, and the donor replied that was his wish. All the subsequent acts and declaration of the donor show the same intent. The gift cannot be upheld as an absolute gift inter vivos, nor as a gift causa mortis, for these gifts require a delivery of the res, a complete transfer of title. They differ from a gift in trust, in that they purport to, and must, pass the whole title, so that the donor can have no dominion or control over them. But a gift in trust withholds the legal title from the donee. It may be transmitted to a third person, or it may be retained by the donor, but in

either case the equitable title has gone from him, and unless the declaration of trust contains the power of revocation, or the wide discretion of chancery attaches, (*Coutts* v. *Acworth*, 8 L. R. Eq. 558 ; *Wollston* v. *Tribe*, 9 L. R. Eq. 44 ; *Everitt* v. *Everitt*, 10 L. R. Eq. 405 ; 7 L. R. Ch. App. 244, & 15 Ch. Div. 570 ; *Lister* v. *Hodgson*, 4 L. R. Eq. 30 ; *Sharp* v. *Leach*, 31 Beav. 491 ; *Anderson* v. *Ellsworth*, 3 Gif. 154 ; *Toker* v. *Toker*, 31 Beav. 629 ; *Phillips* v. *Mullings*, 7 L. R. Ch. App. 247 ; *Smith* v. *Iliffe*, 20 L. R. Eq. 666 ; *Welman* v. *Welman*, 15 Ch. Div. 570, 578, 579 ; *Prideaux* v. *Lonsdale*, 1 De G. J. and S. 433,) it leaves him powerless to extinguish the trust. Of course, the trust must be established by proof, and the fact that no evidence of a voluntary trust once created remains or can be shown, does not alter the principle.   Many rights fail of enjoyment from the lack of evidence that might once be adduced. So a secret trust may be valid when it can be proved, but if the donor conceals the evidence of it and later appropriates the fund to his own use, it is simply a wrong on his part that prevails because of his perfidy, and goes unpunished and unnoticed because unknown.   The cestui's rights are the same, although his remedy may have been destroyed.

In the case of *Re Smith*, 144 Pa. St. 428, a lad of three years went to live with his uncle.   When the lad was twelve the uncle placed $13,000 in bonds in an envelope, on which he had written and signed a declaration that he held them for his nephew.   The bonds remained in the uncle's possession until his death, and the court held a completed gift in trust for the nephew.

In *Connecticut River Savings Bank* v. *Albee*, 64 Vt. 571, the Court says : "A completed trust, although voluntary, may be enforced in equity.   It is not essential that the beneficiary should have had notice of its creation or have assented to it. The owner or donor of personal property may create a perfect or complete trust by his unequivocal declaration in writing, or by parol, that he himself holds such property in trust for the purposes named.   The trust is equally valid whether he constitutes himself or another person the trustee."

In that case a father deposited money in a savings bank in

the name of his son, naming himself trustee. It appeared that one motive of the father was to avoid taxation; but said the court, that fact does not negative the idea that he also intended to create a trust for the benefit of his son. It is perfectly consistent with it, and the retention of the pass book is not inconsistent with such a purpose; he must have retained it as trustee.

*Ray* v. *Simmons*, 11 R. I. 266, is in point. One Bosworth deposited money in a savings bank in his own name as trustee for a stepdaughter. He did not tell her what he had done, nor show her the pass book. He kept that himself. After his death the court held that the stepdaughter was entitled to the money — that the transaction constituted a trust in her favor.

So is *Martin* v. *Funk*, 75 N. Y. 134. Susan Boone deposited $500 in a savings bank " in trust for Lillie Willard." Susan kept the pass book and Lillie had no knowledge of it until after Susan's death. Want of notice to Lillie and the retention of the pass book by Susan were urged in defense; but the court held a gift in trust complete. This is an exhaustive case, and contains a review of authorities by Chief Justice Church prior to 1878.

So is *Minor* v. *Rogers*, 40 Conn. 512. A widow deposited $250 in her own name " as trustee of William A. Minor," the child of a neighbor. The child knew nothing of the deposit until after the depositor's death, and meantime did not have possession of the pass book, and the court held the trust complete, and allowed a recovery of the money from the depositor's executor.

So is *Re Gaffney's Estate*, 146 Pa. St. 49. It appeared that Hugh Gaffney deposited $560 in his own name as trustee for Polly Kim, and the court held the entry itself prima facie evidence of the trust and, unexplained, sufficient to uphold it.

In *Gerrish* v. *New Bedford Institution*, *supra*, the court says : "No particular form of words is required to create a trust in another, or to make the party himself a trustee for the benefit of another; that it is enough for the latter purpose if it be unequivocally declared in writing — or orally if the property be personal — that it is held in trust for the person named ; that

when the trust is thus created it is effectual to transfer the beneficial interest and operates as a gift perfected by delivery."

The same case holds that notice to the beneficiary is unnecessary where the transaction is clear, but when ambiguous, or susceptible of different interpretations, it removes the doubt and is decisive of the purpose of the donor. Some of the earlier Massachusetts cases seem to hold notice to the beneficiary essential to the validity of a trust, but, when considered in the light of this case, rather consider the notice a controlling than an essential element in the creation of a voluntary trust. The prevailing doctrine now is that notice is unnecessary, but when shown has controlling effect.

In this case the entry, "in trust for," is of clear and unmistakable import and sufficient to create a prima facie trust. It might have been controlled by evidence that would have shown a contrary intention, but such evidence is wholly wanting. Moreover, all the declarations, acts and conduct of the donor are consistent with the presumption arising from the entry itself, and show that it expresses the true import of the transaction and creates a completed trust in favor of the donee.

> *Decree accordingly with costs against*
> *the estate.*