Decided 2 June, 1903.

## MARTIN *v.* MARTIN.

[72 Pac. 639]

EVIDENCE OF TRANSFER IN TRUST.

1. The evidence satisfies the court that the transfer questioned in this suit was made to the defendant as a trustee for plaintiff.

PAROL EVIDENCE OF TRUST IN PERSONAL PROPERTY—VARYING WRITING.

2. Parol evidence is competent to show that a transfer of personal property by a bill of sale absolute in form was in trust for the assignor.

ACCOUNTING—INTEREST ON TRUST FUNDS.

3. A trustee is not chargeable with interest on trust funds in his hands unless he has been negligent or unfaithful to his duty.

From Union: ROBERT EAKIN, Judge.

This is a suit by Joseph Martin against his son John Martin to declare a trust in personal property and for an accounting. In September, 1896, the plaintiff transferred to his son, the defendant, seven certain promissory notes by indorsement and a bill of sale, of which the following is a copy, omitting signatures:

"Cove, Union County, Oregon,
September the 8, 1896.
This is to certify that I, Joseph Martin, have this day sold to John Martin all of the following notes and accounts, for which I, Joseph Martin, have received full payment of the said John Martin, for all of the following notes and accounts: One note of six hundred dollars, maker Harris

H. French & Adelaide R. French, dated Feb. 1, 1895 ; one
five hundred and sixty, makers W. T. Martin and Rebecca
Tolly, dated Feb. 17, 1894 ; one note fifty dollars, dated
March 21, 1895, made by John Martin ; one note of two
hundred and fifty dollars, dated March 8, 1892, makers
M. S. Warren and Warren Sisters ; one note of one hun-
dred and forty dollars, dated November 22, 1892, maker
M. S. Warren ; one note of four hundred dollars, dated
June the 1, 1895, maker John Martin ; one note of one
hundred and fifty dollars, dated December the 17, 1889,
makers Thomas F. Weaver, Joseph Huffman, W. W. Gor-
dan, Joel Weaver."

The defendant has collected $600 on the Martin and
Tolly note, $150 on the Weaver note, and converted to his
own use the two notes made by himself.   The French note
was paid to the plaintiff, who claims to have turned the
money over to the defendant ; but this is denied.   The note
of M. S. Warren and Warren Sisters has not been collected,
nor has that of M. S. Warren, and the makers are probably
insolvent.   At the time of the transfer the plaintiff was
about eighty-five years of age, feeble, and practically in-
capacitated from attending to his business.   He claims and
alleges that the notes were assigned and transferred to his
son, in trust to collect the same, use a sufficient amount
of the proceeds thereof to pay for his (plaintiff's) support
and maintenance, and to invest and account to him for
the remainder.   The defendant, on the other hand, con-
tends and avers that the transaction was an absolute sale,
for an adequate consideration, consisting of some $500 pre-
viously paid on account of board for the plaintiff, and $20
in cash paid at the time of the transfer.   He also alleges
that he has since paid out for the plaintiff and on his ac-
count for board, clothing, and other necessary expenses
various sums, aggregating $766.40.   The trial court found
that the transfer was made in trust for the plaintiff, charged
defendant with the amount of the various notes, with

interest, except the balance of the Weaver note, the two notes given by the Warrens, and the amount paid plaintiff on the French note, allowed him credit for money expended for board and other expenses of the plaintiff since the transfer, amounting to $747.10, and entered a decree against him for a balance of $1,010.17, and he appeals.

MODIFIED.

For appellant there was a brief over the name of *Ramsey & Oliver*, with an oral argument by *Mr. William M. Ramsey*.

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford*.

MR. JUSTICE BEAN, after stating the facts in the foregoing language, delivered the opinion of the court.

1. From an examination of the evidence we are satisfied that the findings of the trial court to the effect that the transfer of the promissory notes in question was not intended as an absolute sale, but was made in trust for the use and benefit of the plaintiff, must be sustained. The plaintiff testifies that he was planning to go East on a visit, and his son was to keep the notes for him until his return, and then give them back to him; that he did not go, but allowed the arrangement to continue, and afterward collected the Martin and Tolly note, and turned the money over to defendant, who agreed to invest it in county warrants, or put it in the bank to plaintiff's credit. Mr. Prillaman, who drew the bill of sale, testifies that plaintiff and defendant came to his office, and told him that plaintiff had some notes he desired to turn over to defendant, and wanted a list of them made out; that they told him how they wanted the bill of sale written, and he did as they requested; that plaintiff said he wanted to go back to Iowa, and defendant was to let him have the money for that purpose, and paid him $20 at the time. Mrs. William Martin

says that in the spring of 1901 plaintiff owed her for board, and she asked defendant to pay the bill; that he said he had been paying plaintiff's bills for some time, but would not do so any more, and that there were $100 left, which he was going to keep for the plaintiff's necessary needs. W. T. Martin had a conversation with the defendant about two years before this suit was commenced, in which the defendant made no claim that he had purchased the notes from his father, but said that they could be credited "according to law;" that there were $100 back and unpaid on the Weaver note, and that the plaintiff could get that at any time he wished. The defendant testifies that he had a settlement with his father at the time of the transfer, but gives no details thereof, and, in referring to the transfer itself, says that it was made to him as a gift, and in consideration of his advancing the plaintiff money to take him to Iowa; that he gave his father money for that purpose (without stating the amount), and then persuaded him not to go. The evidence of the defendant itself does not tend to prove a sale of the property to him as alleged in the answer, and, to our minds, the entire testimony indicates very clearly that the transfer was not so intended, but that it was made in trust for the use and benefit of the plaintiff. He was old and feeble at the time, and practically unable to attend to his business affairs. He was contemplating a trip East, and had the utmost confidence in his son. It was very natural, under such circumstances, that he should transfer these notes to his son with the understanding that the son should use the proceeds thereof, or as much as might be necessary, for his (plaintiff's) support and maintenance. Defendant's subsequent conduct in furnishing money for that purpose is corroborative of this theory. It is also borne out by the circumstance that after the transfer the plaintiff collected the amount due on one of the notes, and, according to the de-

fendant's testimony, he appropriated it to his own use. The defendant, however, never made any demand or claim on him for it, thus recognizing his right to its possession.

2. On behalf of the defendant it is argued that the evidence of the property having been transferred in trust varies or contradicts the written bill of sale, and hence it was error to admit it. The rule is elementary that parol evidence is not admissible to vary the terms of a written instrument, but a trust in personal property may be created or declared by parol: *Cooper* v. *Thomason*, 30 Or. 161 (45 Pac. 296); 27 Am. & Eng. Ency. Law (1 ed.), 54; *Savings Institution* v. *Hathorn*, 88 Me. 122 (33 Atl. 836, 32 L. R. A. 377, 51 Am. St. Rep. 382, and note). Such evidence is also competent to show that the transfer of personal property by a conveyance absolute in form was in trust for the assignor: *Chace* v. *Chapin*, 130 Mass. 128. A trust in real property can be created and preserved only by a writing, but in the case of personal property it may be done by parol. In either instance, however, the proof of a trust does not vary or contradict the writing conveying the title, where it does not contain the terms of the trust, but simply shows the purpose for which the conveyance was made. The bill of sale under consideration transferred the legal title to the notes described therein to the defendant. This is not denied by the plaintiff. Indeed, the foundation of his suit is that the legal title of the property is in the defendant, but that he holds it as a trustee only. The bill of sale does not declare or negative a trust; hence parol testimony is admissible to show the real purpose of the transfer, and does not vary or contradict the writing. We conclude, therefore, that the defendant received and now holds the property, or such part of the proceeds as he has not expended for the use and benefit of the plaintiff, in trust for him, and the only remaining question is as to the accounting.

3. The court below made no finding as to the money received by the plaintiff on the French note. That it was paid to him is conclusively shown by the check drawn in his favor, indorsed and cashed by him at the bank. He has no recollection as to what he did with the money, and the defendant testifies positively that no part of it ever came into his hands. Upon this issue, therefore, the plaintiff must fail. The two Warren notes have not been collected, and, although the makers are probably insolvent, the plaintiff is entitled to the possession of the notes. The Weaver note, upon which there is a balance still due, should also be turned over to him. The court below held the defendant to a strict accounting, and charged him with interest on the money collected on the Martin and Tolly note and on the Weaver note. In our opinion, however, there is not sufficient evidence to sustain this charge. A trustee is not chargeable with interest on the trust funds, unless he has used them for his own profit, or invested them so as to produce interest, or suffered them to lie idle when they might have been invested, or needlessly delayed settlement and surrender of the property, or in some other way shown a want of diligence and good faith: 27 Am. & Eng. Ency. Law (1 ed.), 179. It has not been established here, however, that the defendant ever received any interest on the money, or that he invested it, or was negligent in not doing so, or converted it to his own use. Under such circumstances, we do not think he should be held to a strict accountability, and charged with interest on the fund.

The credits allowed him by the court below are, in our opinion, in accordance with the testimony. His claim for money paid for the board of plaintiff prior to the transfer to him of the notes in question is not borne out by the evidence. There is nothing to show how much money he expended on that account, or for what length of time he

paid the plaintiff's board.  Plaintiff had ample means with which to pay his own board, and there is no reason adduced why he did not do so.  In addition to this, a short time before the transfer the defendant borrowed $450 of the plaintiff, on which he afterwards made some payments of interest, without claiming that the plaintiff was indebted to him in any sum.  All this is inconsistent with his present position.  The decree of the court below will therefore be modified by eliminating the charge for interest on the money collected from the Martin and Tolly note and the Weaver note, and in all other respects affirmed.

MODIFIED.