J. M. WALSH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GEORGE L. KILMER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JOSEPH M. WALSH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 13150, 23937, 34196. Promulgated December 26, 1929.

572

*Gregory L. Smith, Esq., F. M. Hubbard, Esq.,* and *Harry H. Smith, Esq.,* for the petitioners.

*John E. Marshall, Esq.,* for the respondent.

574

OPINION.

TRUSSELL: In these proceedings we have before use the question of the tax liability of J. M. Walsh, as an individual, for the year 1920, and the tax liability of G. L. Kilmer, as an individual, for the years 1920 and 1922. The issues are whether they each owned 12½ shares or 50 shares of stock of the Mobile-Gulfport Lumber Co. on the date of the sale thereof in 1920, and whether they filed false and fraudulent returns.

Early in 1920 petitioners received an offer to purchase the assets of the lumber company, all of the stock of which they owned. After seeking and receiving the advice of an accountant as to the amount of tax which would be exacted upon the large profits derived from such a sale, the offer was definitely refused, for petitioners considered the tax prohibitive. Petitioners did not seek a method to evade taxation upon their individual incomes, but were advised that they had a legal right to make a gift of their stock or part of it and that in the event of the sale thereof the donees' taxable profit would only be the difference between the value on the date of the gift and the sale price. Relying upon the advice of an attorney, and for the admitted purpose of avoiding the payment of a large tax and with the intent to make absolute and irrevocable gifts, petitioners executed on April 9, 1920, the trust instrument set forth in the findings of fact. To complete the transaction to divest themselves of the ownership of three-fourths of their Mobile-Gulfport Lumber Co. stock, they transferred that amount of their stocks to themselves as trustees; surrendered the old certificates of stock which were canceled and had new certificates issued by the corporation, one to Walsh for 12½ shares, one to Kilmer for 12½ shares and one to Walsh and Kilmer, trustees, for 75 shares. Walsh and Kilmer, as trustees, exercised their powers under the trust in selling the property which they held in trust and they received payments from the purchasers, as trustees. Also, they had the trust instrument recorded in the probate court of Mobile County, Alabama.

In the case of *Robert Jemison, Jr., et al.*, 3 B. T. A. 780, the taxpayers negotiated for the sale of the assets of a corporation whose stock they owned, but discovered that the tax would be substantial if the corporation carried out the transaction, so they consulted an attorney as to a legal method to avoid the large corporation tax. Upon

advice of counsel each of the taxpayers gave one-half of his stock to his wife, the corporation's assets were distributed, and it was dissolved. The individuals sold the said assets and received the purchase price as individuals. The Board held that the gifts to the wives were bona fide, and that the profits from the sale of the said assets inured to the several individuals and were not taxable to the corporation, nor entirely to the taxpayers. In its opinion, the Board said:

These transactions were either fraudulent or they were what the taxpayers claim them to have been. The parties either accomplished what they set out to accomplish, namely, the registration of the profit in the names and on the part of the individuals, or they failed to do so. If they succeeded they owe a tax upon the transaction as individuals, and if they knowingly and willfully failed to report that profit as taxable gain they were guilty of fraud. If the corporation made the profit and its officers willfully and knowingly failed to return that profit they and the corporation were guilty of fraud. If the tax was successfully avoided there was neither a fraud nor a tax. The two are inseparable. If the device succeeded it avoided the tax; if it failed the transaction was fraudulent; and there is no concealment on the part of the parties that they intended to do exactly what they did. If what they did was unlawful they were guilty of fraud, whether or not they specifically intended to violate the law. *Horning* v. *District of Columbia*, 254 U. S. 135.

The courts have also held that a device to avoid or minimize the burden of the revenue acts may be resorted to if effectuated by legal means. *United States* v. *Isham*, 17 Wall. 496; *Frazer* v. *Nauts*, 8 Fed. (2d) 106; *Ford* v. *Naught*, 25 Fed. (2d) 1015.

There can be no doubt that petitioners had the legal right to make a gift of a portion of the Mobile-Gulfport Lumber Co. stock which they owned outright on April 9, 1920, and the main issue at bar is whether they succeeded in making a valid and completed gift of such stock prior to April 13, 1920, the date of the sale thereof.

In the case of *Parrott* v. *Noel*, 8 Fed. (2d) 368, the court said:

The essential elements of a gift are an intention to deliver, gratuitously and without legal consideration, and a delivery, either actual or constructive, of the thing given. There must be both the purpose and the execution of the purpose. The expression of the purpose may be either oral or in writing and it must be carried into effect by delivery of the thing itself and by acceptance of it by the donee. When those essentials obtain the gift is complete.

Also, see *Lee* v. *Lee*, 5 Fed. (2d) 767; *Lust* v. *Miller*, 4 Fed. (2d) 293.

To create a trust the settlor or donor must use language which clearly indicates the intention to stamp such character upon a gift and the declaration must be unequivocal. *Eschen* v. *Steers*, 10 Fed. (2d) 739; 26 R. C. L., p. 1180, §18.

The trust deed executed by petitioners on April 9, 1920, clearly and unequivocally establishes their intention to make the gifts in question and to stamp such gifts with the character of a trust with no power

of revocation reserved. On the same date the stock was transferred on the records of the corporation, the old shares were canceled and new ones issued—one certificate to each of the petitioners, as individuals, for 12½ shares and one certificate for 75 shares to petitioners as trustees for the various donees, thus vesting the beneficial and equitable title in the donees. When petitioners received and accepted the said 75 shares of stock as trustees on April 9, 1920, sufficient delivery had been made and the gifts were completed. *Conlon* v. *Turley*, 10 Fed. (2d) 890; *Grisson* v. *Sternberger*, 10 Fed. (2d) 764; 12 R. C. L., p. 943, Gifts, §11; *Wiggs* v. *Winn*, 127 Ala. 621; 29 So. 96; *Johnson* v. *Amberson*, 140 Ala. 324; 37 So. 273. It is well settled that the donor may constitute himself trustee without affecting the validity of the trust; 26 R. C. L., p. 1191, §27; *Johnson* v. *Amberson, supra; Bath Sav. Inst.* v. *Hathorn*, 88 Me. 122; 33 Atl. 836.

It was not necessary to the validity of the gifts for the donees to formally signify their acceptance of the gifts nor even to have knowledge of the same, for the trust was for their benefit and acceptance is presumed unless there be actual dissent of the donees. *Arrington* v. *Arrington*, 122 Ala. 517; 26 So. 152; *Grisson* v. *Sternberger, supra; Roberts* v. *Taylor*, 300 Fed. 257. Furthermore, when a gift has been completed it vests in the donee and remains so vested until he repudiates it. *Miller* v. *Herzfeld*, 4 Fed. (2d) 355.

Where a trust is perfectly created, though voluntary, without the power of revocation, it is irrevocable and may not be repudiated or affected by the subsequent acts of the settlor or donor. *Stoehr* v. *Miller*, 296 Fed. 414; *Stark* v. *United States*, 14 Fed. (2d) 621; *Grisson* v. *Sternberger, supra; Conlon* v. *Turley, supra.* In the *Conlon* v. *Turley* case, John Rudden sold certain property and directed a bank to purchase certain bonds with the proceeds. When the bonds had been purchased and were ready for delivery, Rudden directed the bank to hold them in the name of his niece, Margaret Turley, whom he called his adopted daughter. The bonds were placed in the bank's vault in an envelope marked "Margaret V. Turley" and the bank gave Rudden a receipt stating that the bonds had been received from Margaret V. Turley. The receipt was shown to Margaret, but was kept in Rudden's office safe. Rudden instructed the bank to clip the coupons when they became payable and credit them to his account, which was done. After Rudden's death the aforementioned receipt was found in his office safe. The issue was whether Rudden had made a valid gift or whether the bonds were a part of his estate. The court held that delivery was sufficient and that a valid and completed gift had been made. The court further held that where a valid completed gift has been made, no subsequent action of the donor alone can rescind it.

In view of the facts of record and the decisions hereinbefore cited, we are of the opinion that on April 9, 1920, each of the petitioners divested himself of the ownership of 37½ shares of stock of the Mobile-Gulfport Lumber Co. by making valid, bona fide and completed gifts of the same on that date. While it is true that prior to such gifts negotiations had been entered into for the sale of the lumber company's assets, the actual sale of the stock was made on April 13, 1920, subsequent to the date of the gifts, and there is no evidence establishing the contrary as contended by respondent, nor is there any evidence establishing a lack of genuineness in the acts of the petitioners. Respondent lays stress upon the fact that the petitioners commingled the trust funds with their personal funds for a period of time, but that fact is more or less immaterial, for as pointed out hereinbefore the subsequent acts of the donors alone can not rescind the gifts. The petitioners' liability as trustees remained.

The Board has heretofore considered cases involving similar issues. In the case of *M. J. Sullivan*, 2 B. T. A. 1012, the taxpayer negotiated with an oil company for the sale of his interest in an oil lease, he then assigned that interest to his wife as a gift, after which he and his wife and the oil company entered into a written contract whereby the oil company agreed to purchase the said interest in the lease from the wife. The Board held the transfer of the interest in the lease to be a bona fide gift and that the taxpayer realized no taxable income upon the sale thereof.

In the case of *H. B. Garden*, 16 B. T. A. 592, the taxpayer surrendered certain shares of his stock in a corporation and had them reissued in the name of his wife to whom he delivered them. Several months later, with the consent of his wife, the taxpayer contracted in his own name for the sale of stock standing in his wife's name and also some of the same stock standing in his name. The proceeds from the sale were deposited in their respective bank accounts, but the wife checked hers out and loaned it to the taxpayer for oil operations. The taxpayer gave no notes or security for the loans, but paid back certain amounts in subsequent years. The board held the gift of stock to his wife to have been bona fide and complete prior to the sale thereof. Also, compare *Harry C. Moores*, 3 B. T. A. 301; *John W. Bailey*, 3 B. T. A. 362; *Frederick H. Hoffman*, 3 B. T. A. 964; *Earl O. Johnson*, 5 B. T. A. 253; *Charles W. Walworth*, 6 B. T. A. 788; *H. C. Wiess et al.*, 7 B. T. A. 467; *Estate of James F. Foster*, 13 B. T. A. 496; *Fidelity-Philadelphia Trust Co., Executor*, 16 B. T. A. 1214; and *George W. Dulany, Jr., et al.*, 17 B. T. A. 486.

The respondent erred in determining that each of the petitioners owned 50 shares instead of 12½ shares of the said stock on the date

of the sale thereof; that they each derived profits therefrom in excess of $24,176.70; and that they filed false and fraudulent returns with the intent to evade income taxes.

The respondent further erred in determining that Kilmer received $4,958.52 as interest in 1922 as his individual income instead of as trustee.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*

LANSDON, STERNHAGEN, MURDOCK, and BLACK dissent.