Argued and submitted December 14, 1979,
affirmed as modified February 11, 1980

In the Matter of the Marriage of
BAUDER,
*Respondent,*
*and*
BAUDER,
*Appellant,*
*and*
HART,
*Intervenor-Respondent.*

(No. 78-4349, CA 14888)

605 P2d 1374

Paul D. Clayton, Eugene, argued the cause for appellant. With him on the brief was Luvaas, Cobb, Richards & Fraser, P. C., Eugene.

Donald Diment, Jr., Eugene, argued the cause for respondent. With him on the brief was Diment, Jagger & Billings, Eugene.

John M. Biggs, Eugene, argued the cause and filed the brief for intervenor-respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Husband appeals from that part of a dissolution decree relating to the distribution of property.

The case presents at least one unique problem: the parties were involved in a ménage à trois, consisting of husband, wife and another man, Mr. Hart, who was granted leave to intervene—by the husband and wife in the home and marriage, and by the court in the dissolution proceeding.[1]

Husband and wife were married in June, 1970; husband was 23 years older than she. Prior to the establishment of what the parties characterize as the "communal marriage," husband and wife purchased a house in which they lived. Title was held by them as tenants by the entirety. The source of the down payment was an annuity given the husband by his father shortly before his father's death.

In February of 1974, Mr. Hart became a roomer in the marital home and was the only one of the three who was regularly employed. Wife is disabled and receives Social Security disability income and also received payments for caring for several foster children until early 1974. Husband was not regularly employed until the early part of 1975.

In April, 1974, husband and wife had a joint checking account in which there was about $9,000. They turned that account into a three-way joint account by adding Mr. Hart's name to it. The record is not clear when Mr. Hart started depositing money in that account; however, sometime during that year he did and continued to deposit money in it. In fact, he contributed to the common fund slightly more than 50 percent on the average for 1975, 1976 and 1977.

During the summer of 1974, husband was concerned that Mr. Hart was going to leave. At that time wife

---

[1] We do not consider whether the order granting leave to intervene was within the trial court's discretion because no objection was raised in the trial court.

testified there was a discussion about giving Hart a one-third interest in the house, and that husband told Hart this would be done. Husband did not remember that conversation, and Hart did not testify. Also at that time, husband told wife to present herself sexually to Hart in order to keep him in the relationship. Wife did so; she bore him one child and was pregnant a second time at the time of trial.[2]

Needless to say, Mr. Hart stayed and contributed his income to the common fund. No change was made in the record title to the property. In fact, husband and wife obtained a second mortgage on the house in 1976, at which time nothing was said or done to indicate that Hart was a part owner of the property.

It is not clear upon what basis the trial judge decided to award Hart an "interest" in the real property. In *Beal v. Beal,* 282 Or 115, 577 P2d 507 (1978), the court recognized that the cohabitation of an unmarried man and woman was no longer considered to be a meretricious relationship undeserving the aid of a court of equity. A division of property accumulated during the period of cohabitation, it held, depended upon the intent of the parties, which may depend upon inferences to be drawn from the circumstances. *Cf. Rissberger v. Gorton,* 41 Or App 65, 597 P2d 366, *rev den* (1979); *Brazell v. Meyer,* 42 Or App 179, 600 P2d 460 (1979). We are not prepared to hold that the rule should, as a matter of public policy, be extended to the situation here presented. Clearly, the fact that an unmarried person cohabits with a married couple should not give rise to any inference that the parties agreed to share incomes or property acquired during cohabitation.

That is not to say that a constructive trust may never be established in those circumstances. For example, if it were shown that husband and wife promised Hart a one-third interest in the property if

---

[2] The trial court found that husband was incapable of being the father as a result of a surgical procedure, and awarded no child support.

[446]

he deposited a specified sum in the joint account and that he did so in reliance on that promise, but the interest was not conveyed, a constructive trust could arise in Hart's favor. *Albino v. Albino,* 279 Or 537, 568 P2d 1344 (1977); *cf.* 6 Bogert, Trusts and Trustees, § 471 (2d ed 1960). Such a trust may also arise out of a confidential relationship between the parties where the title holder of property refuses to recognize an interest therein which the contributing party reasonably anticipates is his (or hers) by reason of the contribution and that relationship. Under those circumstances it is not necessary to prove an express promise or agreement if the evidence is such as to negate any conclusion other than that a promise or agreement on the part of the alleged trustee is to be implied from the circumstances. *Marston v. Myers et ux,* 217 Or 498, 342 P2d 1111 (1959).

Hart's contention that there was an express agreement to give him a one-third interest in the property is not supported by the record. If wife's testimony is believed, the most that can be said is that she and husband said they would give him that interest, presumably, but not explicitly, if he continued the relationship. Nothing in the record indicates how long Hart would have to remain or how much he would be required to contribute. Because Hart did not testify, we do not have his version.

Even if we were to recognize a confidential relationship here, there is not a scintilla of evidence that Hart acted in any way in reliance on the statement wife said was made. Nor can we say that the only reasonable conclusion that can be drawn from Hart's continuing to contribute to the common fund is that husband and wife promised to give him a one-third interest in the property. Quite to the contrary, the record suggests that Hart had a good thing going: room and board, a satisfying sexual relationship and the joys of parenthood—all without any specific obligations. He was not liable on either of the two mortgages securing loans and he had no determined obligation to support

[447]

the children or their mother. He was free to leave any time. For all that appears, he got what he bargained for. Husband moved out prior to the commencement of this proceeding, and at the time of trial Hart and wife were continuing to live in the house.

From what we have said, it follows that Hart is not entitled to an interest in the house, and those portions of the decree recognizing any interest in him are deleted therefrom.

The trial court, after giving Hart a lien on the house to secure the payment of $11,662.27, divided the remaining assets equally between husband and wife, resulting in the granting of a judgment in favor of husband for $2,293.06, which was a lien against the real property awarded to wife. We agree that the assets should be divided equally, and in light of our disposition of the case the equalizing judgment for husband must be redetermined. We also agree with the values attributed to the assets. The decree is modified to increase the judgment in favor of husband to $8,124.20 to be paid within three years from the date of entry of the mandate herein or sooner if the property is sold.

Husband's remaining contentions need not be discussed.

The decree of the trial court is affirmed except as modified herein.

Affirmed as modified; costs to appellant against intervenor.